## Stephen P. Kilgore *versus* James Wood.

Tenants in common of certain timber lands entered into a written contract, wherein it was agreed that the one owning two-thirds of the common estate should, in consideration of certain payments to be made at specified times, sell his interest to the other owning the remainder, and "all timber or lumber to be holden to the" vendor, " either on the landing at the river, or at the mill," and the vendor to give the vendee "a deed as soon as convenient or possible, said timber to be holden for said payments to all intents and purposes." The vendee did not make all the payments as agreed, nor demand or receive any deed, but sold the timber on the stump to the defendant, who caused it to be cut and hauled to the landing; and, while rolling it into the river for the purpose of driving it to market, the vendor appeared and claimed it, showing his contract, and forbade the defendant's turning in any more; but the defendant persisting, the vendor immediately brought trover for the logs before they had arrived at their destination : — *Held,*

1. That the lien created by the contract attached only to the plaintiff's two-thirds interest in the logs;

2. That the defendant's purchase made him a tenant in common with the plaintiff; and

3. That, as between tenants in common, the facts do not constitute a conversion.

On Report.

Trover for three hundred and eighty-six thousand feet of logs.

The facts are sufficiently stated in the opinion. The case was submitted to the full Court to render judgment according to the legal rights of the parties.

*S. F. Gibson*, for the plaintiff.

The plaintiff claims title to the whole of the property by force of the agreement.

The plaintiff had a good and sufficient lien on the timber upon the landing, and that lien was in full force and effect at the time of the forbidding. *Sawyer* v. *Fisher*, 32 Maine, 28.

There was no waiver by plaintiff of his rights, by voluntarily parting with the possession, or by any act or agreement

founded upon a valuable consideration. *Spaulding* v. *Adams*, 32 Maine, 211; *Danforth* v. *Pratt*, 42 Maine, 50.

The principle of *caveat emptor* must be applied in all its force against the defendant. *Sawyer* v. *Fisher*, 32 Maine, 28.

The defendant, by his purchase from Bragg, could not acquire any greater rights than his vendor (Bragg) had.

The question of confusion or intermixing of the timber, has no force as against the plaintiff; if they were so intermixed, it was done by the defendant, through his vendor. *Hazeltine* v. *Stockwell*, 30 Maine, 237; *Spofford* v. *True*, 33 Maine, 284.

The timber being, to all intents and purposes, the property of the plaintiff, and the immediate right to possession in him, when on the landing, the demand and forbidding by plaintiff (in April, 1866,) and the subsequent acts of the defendant, establish, beyond question, a wrongful conversion by the defendant. *Dickey* v. *Franklin Bank*, 32 Maine, 572; *Moody* v. *Whitney*, 34 Maine, 563; *Fernald* v. *Chase*, 37 Maine, 289.

The damages to the plaintiff, in this case, should be the value of the property at the time of conversion, or right to the action commenced, with interest. *Brown* v. *Haynes*, 52 Maine, 578; *Pierce* v. *Benjamin*, 14 Pick., 357; *Fowler* v. *Gilman*, 13 Met., 267.

The plaintiff is the general owner, and, as such, is entitled to compensation. The defendant had no lien, and never had, and cannot claim any deduction.

There having been a demand and forbidding on the landing, the damage should be the value of the timber on the landing. *Moody* v. *Whitney*, 38 Maine, 174, (last clause of the opinion.)

But the defendant (*dehors* the agreement " A,") may contend that Bragg was a co-tenant of the plaintiff, and, by the sale by Bragg to him, the defendant became co-tenant of the plaintiff.

If the Court should find that the plaintiff had no lien on

the timber, then plaintiff claims that the defendant is liable in this form of action, to the extent of plaintiff's interest (two-thirds,) in the timber cut and hauled by Bragg. *Weld* v. *Oliver*, 21 Pick., 559; *Wheeler* v. *Wheeler*, 33 Maine, 347.

Bragg could only sell his share to the defendant, and he could hold only that share. The defendant sold and disposed of the entire property, for, he says, he "drove the timber to Lewiston and the Lewiston St. M. Co. used it." How came they by it? The defendant was the last person seen by plaintiff in possession of the timber, and the presumption of law is that he disposed of it.

We contend that an agent is liable for misfeasances or torts to the owner of the property, whether he acted by the direction of his principal or not. *Perkins* v. *Smith*, 1 Wilson, 328; *Bush* v. *Steinman*, 1 B. & P., 410; *Fairbrother* v. *Ansley*, 1 Camp., 343.

*D. Hammons*, for the defendant.

Barrows, J. — The logs for which this action of trover is brought, were cut on land owned in common and undivided by one Wm. W. Bragg and the plaintiff; the plaintiff owning two-thirds, and Bragg one third of the land. The defendant, as agent for the Lewiston Steam Mill Co., in Nov., 1865, bargained for them before they were cut, with Bragg, who agreed to sell and deliver them at a stipulated price on the banks of Bear river. They were worth $1 per M. on the stump, and $6, when delivered as stipulated. Bragg received from the defendant an advance of $1200 on the timber, at the time of the bargain, and employed one Widbur to get it to the banks of the river, at $5 per M. Widbur was paid by the defendant; the amount to be paid being settled by him with Bragg. Bragg testifies that he informed Alvah Kilgore, the father and agent of the plaintiff, (who being out of health, lives with his father, and entrusts the management of his business to him,) of this sale, on the day it was made; that he told Alvah that he could not pay.

plaintiff then, but would in the spring, and that Alvah made no objection, either to the sale or to the time of payment. This Alvah denies, but admits that he knew that Widbur drew timber from the same land for Bragg, the winter before, which the Lewiston Steam Mill Co. had, and that he knew of this transaction about the time they commenced operating. It appears that the timber was all drawn past the house occupied by the plaintiff and his father, and landed upon the bank, about fifty rods from the house, on land belonging to Alvah Kilgore's wife; and, it cannot be doubted, that both the plaintiff and his father were fully cognizant of the operation and its purpose throughout its entire progress. Yet neither of them interposed any objection or claimed any right in or lien on the logs, until the defendant came in the spring to turn the logs into the river.

The plaintiff now claims that he alone was entitled to the possession of the timber, (notwithstanding it was cut upon land owned by him in common with Bragg, the defendant's vendor,) by virtue of an agreement made between himself and Bragg, Nov. 15, 1864, whereby the plaintiff agreed to sell the land to Bragg for $75 cash down, $100 in January, 1865, and $225 in April, 1865, containing also the following provision;—" and all timber or lumber is to be holden to him the said Stephen P. Kilgore, either on the landing of the lumber at the river or at the mill." There is a further stipulation, that " said Kilgore is to give the said Bragg a good and sufficient deed soon as convenient or possible, said timber to be holden for said payments to all intents and purposes."

Bragg had paid only $125 on the agreement,—had never received a deed from plaintiff nor called for one.

Under these circumstances, the defendant came to the landing in the spring of 1866, to turn the logs into the river, which is a rapid and narrow one, capable of being driven only in the spring; and, while he was thus engaged, the plaintiff's agent forbade his doing it, thus first making known

the plaintiff's claim on the timber. The defendant persist-
ed in turning the logs into the river, saying that plaintiff's
claim was as good at Lewiston as it was there ; and this suit
was commenced forthwith, long before the logs could have
arrived at Lewiston.

It is not necessary to decide in this case whether, if the
plaintiff's claim of lien upon all the timber cut on the com-
mon land could be sustained, he has so conducted as to pre-
clude him from asserting it, or has ratified Bragg's sale to
the defendant. A fair construction of the plaintiff's agree-
ment with Bragg will not extend the plaintiff's lien to the in-
terest which Bragg previously had in the timber, as tenant in
common with the plaintiff of the land on which it was cut.
The agreement provides for a sale of the plaintiff's interest
in the land to his co-tenant Bragg, and the lien reserved to
secure the payments attaches to the plaintiff's two-thirds of
the timber only. To hold it valid and binding on Bragg's
third, as against his grantee, would be to ignore the statute
requiring mortgages of personal property to be recorded.
The operation upon the common land was carried on by
Bragg with the consent of his co-tenant, the plaintiff. The
existence of this agreement and the reservation of the lien
upon the timber, both at the landing and at the mill, proves
this beyond question. Bragg and the plaintiff, then, were
owners of the timber as tenants in common. The purchase
from Bragg made the defendant, at the worst, a tenant in
common with the plaintiff therein. In this condition of
things the plaintiff assumed to prevent his co-tenant, the
defendant, from turning the logs into the river. The de-
fendant, scarcely denying the plaintiff's claim, but saying
it was as good at Lewiston as it was there, declined to yield
to this assumption, maintained his possession of the common
property, and proceeded to do what was necessary, as it ap-
pears, to save it from a heavy depreciation, to wit, to drive
it out of Bear river while the season and state of the water
permitted. Hereupon an action of trover is brought against
him by his co-tenant. When the action was commenced,

the defendant was in possession of the property and doing his best for its preservation. As between tenants in common, here is no proof of a conversion.

It is settled that trover will not lie against the vendee of the original co-tenant while he remains in possession of the property, although claiming it as sole owner. *Dain* v. *Cowing*, 22 Maine, 347; *Gilbert* v. *Dickenson*, 7 Wendell, 449.

The action was at all events prematurely brought.

*Plaintiff nonsuit.*

KENT, DICKERSON, DANFORTH and TAPLEY, JJ., concurred.